IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE TENNESSEE


BRIAN EBERHARD                    )
                                  )
v.                                )          NO. 3:15-0156
                                  )
PHYSICIANS CHOICE LABORATORY      )
SERVICES, LLC                     )


To:  The Honorable Kevin H. Sharp, Chief District Judge


## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion to Attach or Freeze Assets of Defendant or

for Other Relief (the "Motion") (Docket No. 80). Defendant opposes the Motion. Docket No. 83.

Because the Motion includes requested relief that is in the nature of injunctive relief, the

recommended disposition is presented as a report and recommendation by the Magistrate Judge.

28 U.S.C. § 636(b)(1)(B).   For the following reasons, the Magistrate Judge respectfully

recommends that Plaintiff's Motion to Attach or Freeze Assets of Defendant or for Other Relief

be DENIED.


## I.    Background

The facts relevant to the narrow issue before the Court are relatively simple. Plaintiff Brian

Eberhard ("Eberhard" or the "Plaintiff") brings a retaliation claim under 31 U.S.C. § 3730(h)

against Defendant Physicians Choice Laboratory Services, LLC ("PCLS" or the "Defendant").

The First Amended and Restated Complaint alleges that Defendant retaliated against Plaintiff by

cancellation of a Separation Agreement, in violation of the anti-retaliation provision of the False Claims Act, after Plaintiff filed a *qui tam* action against Defendant, for which Plaintiff seeks damages for withheld amounts provided for by the Separation Agreement, including double damages (plus pre-judgment interest), and special damages.  Docket No. 7.[1]

After various extensions, partly to allow for resolution of discovery disputes, the deadline for discovery expired on May 31, 2016.  *See* Order at Docket No. 66.  By Order entered on August 25, 2016, trial of this action was rescheduled from September 20, 2016 to January 17, 2017.  Docket No. 79.

On September 8, 2016, Plaintiff filed the pending Motion.  In his Motion, Plaintiff alleges that Defendant may intend to sell some or all of its assets.  Docket No. 80 at ¶ 2.  Plaintiff further alleges, but without any additional facts other than the reference to the possible sale, that Defendant has absconded with or is about to abscond with its property, and that Defendant has fraudulently disposed of or is about to fraudulently dispose of its property.  *Id*. at ¶¶ 5-6.  Plaintiff seeks relief under Rule 64 of the Federal Rules of Civil Procedure and Tennessee's attachment statute, found at Tenn. Code. Ann. § 29-6-101 *et. seq.*  Plaintiff alternatively requests that the Court "exercise its equitable powers to freeze the assets of [Defendant], to preserve the status quo, and to allow time for the investigation of [Defendant's] actions with regard to disposal of any or all of its assets."  *Id*. at ¶ 7.  Alternatively, Plaintiff requests imposition of a constructive trust (*Id*. at ¶ 8), or that he be permitted to recommence discovery regarding Defendant's alleged asset sale (*Id*. at ¶ 9).  Defendant opposes the requested relief.

---

[1] Defendant's motion to dismiss was denied by memorandum and opinion of Chief Judge Sharp. Docket Nos. 31 and 32.  Plaintiff thereafter filed a motion for partial summary judgment (Docket No. 37) and Defendant filed a motion for summary judgment (Docket No. 67), both of which remain pending.

## II.    Analysis

### A.  Prejudgment Attachment

Fed. R. Civ. P. 64 "gives federal courts jurisdiction to impose every remedy available under the laws of the state where the court is located to secure satisfaction of a potential judgment," and specifically contemplates the remedy of attachment.  *Bristol Anesthesia Servs., P.C. v. Carilion Clinic Medicare Res., LLC*, No. 2:15-cv-17, 2016 WL 885089 at *4 (E.D. Tenn. March 8, 2016). Under Tennessee law, the property of a judgment debtor or defendant may be attached in enumerated statutory circumstances, including when the debtor or defendant resides out of state, has absconded, or has fraudulently disposed of or is about to fraudulently dispose of the property. Tenn. Code Ann. § 29-6-101.  Attachment is available for unliquidated debts, except that, under the plain language of the statute, prejudgment attachment is expressly precluded when the only ground for such attachment is the out-of-state residence of the defendant. Tenn. Code Ann. § 29-6-102.  *See also Heartland Payments Sys., Inc. v Hickory Mist Luxury Cabin Rentals, LLC*, No. 3:11-cv-0350, 2011 WL 6122371 at *3 (E.D. Tenn. Dec. 8, 2011). A plaintiff's request for prejudgment attachment must be accompanied by a statement under oath that describes "the nature and amount of the debt or demand, and that it is a just claim … and, also, that one (1) or more of the causes enumerated in § 29-6-101 exists."  Tenn. Code Ann. § 29-6-113.

 "The burden [is] upon plaintiff to show by a preponderance of the evidence that grounds for an attachment [exist]."  *Commerce Union Bank v. Kephart*, No. 85-300-II, 1986 WL 4280 at *4 (Tenn. Ct. App. April 9, 1986) (citing *J.H. Wrompelmeir & Co. v. Moses*, 62 Tenn. 467, 475 (1874)).  Allegations made in support of a requested  attachment must be based on something more than mere speculation. *Id*. ("The allegation must be of a fact susceptible of issue and proof ...").

*See also McHaney v. Cauthorn*, 51 Tenn. 508 (1871) (information and belief insufficient to sustain issuance of an attachment) and *Nelson v. Fuld*, 89 Tenn. 466 (1890) (same).

Here, although Plaintiff alleges fraudulent action by Defendant, those allegations are nothing more than recitation of the statutory language without any supporting facts, leaving only the ground that Defendant is located out of state.[2] Because the Tennessee statute prohibits attachment for a debt not yet due where the only basis for attachment is that the defendant resides out of state, Plaintiff's request for attachment must be denied.

### B. Request to Freeze Assets

Plaintiff also requests that this Court exercise its equitable powers to freeze Defendant's assets. However, the cases upon which Plaintiff relies as authority for that request are inapposite. In each of those cases, the injunctive order freezing assets was for purposes other than securing satisfaction of a possible damages award. The *USACO Coal Company* case involved a fiduciary relationship, which created a constructive trust, and the Sixth Circuit expressly held that the preliminary injunction was not "for the purpose of securing satisfaction of the judgment ultimately to be entered in the action," but rather preserved assets for which the defendants might be accountable under the constructive trust. *USACO Coal Company v. Carbomin Energy, Inc.* 689 F.2d 94, 95-97 (6th Cir. 1982). Likewise, in the *DeLorean Motor Company* case, the Sixth Circuit

---

[2] The Court acknowledges Plaintiff's argument that he is without any means by which to develop his information and belief because Defendant has refused to respond in substance when asked about a potential asset sale. However, because Plaintiff claims punitive damages (*see* Docket No. at 80 at 1), he could have inquired in discovery about Defendant's financial condition. *See In re Heparin Products Liability Litigation*, 273 F.R.D. 399, 407 (N.D. Ohio 2011) (collecting cases). Defendant acknowledges that Plaintiff could have discovered this information. *See* Docket No. 83 at 6-7. As noted below, the discovery deadline in this case has expired, and Plaintiff has not shown good cause for an extension. If Plaintiff ultimately becomes a judgment creditor of Defendant, he will have the availability of post-judgment discovery, as well as remedies for any discovered fraudulent transfers by Defendant. *See* Tenn. Code Ann. §§ 66-3-301 et. seq. and 66-3-301 et. seq.

expressly stated the preliminary injunction was not to secure satisfaction of any possible judgment, but rather to allow for a determination of whether the subject assets were part of a bankruptcy estate and therefore available for distribution to creditors in accordance with the Bankruptcy Code. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1227 (6th Cir. 1985). The district court in *Commodity Futures Trading Comm. v. Morgan, Harris & Scott, Ltd.*, a receivership case, similarly stated that the order imposing a temporary freeze of assets was necessary to ensure that the receivership court maintained control over the assets, and was "not designed to seize defendants' assets as security for an ultimate money judgment." *Commodity Futures Trading Comm. v. Morgan, Harris & Scott, Ltd.*, 484 F.Supp.669, 678 (S.D. N.Y. 1979).

None of those circumstances exist here. Plaintiff's request to freeze Defendant's assets is made solely for the purpose of securing satisfaction of any judgment he might ultimately obtain. That kind of equitable relief has been unavailable to a prejudgment creditor for more than 200 years of American jurisprudence. *See e.g. Adler v. Fenton*, 65 U.S. 407, 24 How. 407, 16 L.Ed. 696 (1861) and *Grupo Mexicano de Desarrolo S.A. v. Alliance Bond Fund, Inc.*, 427 U.S. 308, 323, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) (a party's unencumbered assets cannot be "frozen by general-creditor claimants before their claims have been vindicated by judgment").

In *Grupo Mexicano,* the Supreme Court granted certiorari to determine "whether in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Id.* at 310. The Supreme Court held that prior to entry of judgment, a creditor cannot invoke a court's equitable powers to freeze assets to be later used to satisfy a money judgment. *Id.*

at 321, 325.  That is precisely the relief requested by Plaintiff.[3]  The Supreme Court stated that prejudgment asset freezes, if allowed, would

> radically alter the balance between the debtor's and creditors' rights which has been developed over centuries through many laws-including those related to bankruptcy, fraudulent conveyances, and preferences. Because any rational creditor would want to protect his investment, such might induce creditors to engage in a "race to the court house" in cases involving insolvent or near insolvent debtors, which might prove fatal to the struggling debtor.

*Id.* at 331.

In this case, Plaintiff has no lien or other equitable interest which would give him the right to control Defendant's assets.  As in *Grupo*, the relief requested here—namely, to prevent a suspected sale of assets—has nothing to do with Plaintiff succeeding on the merits of his case, but rather is sought to protect an anticipated, but as of yet uncertain, judgment.  Accordingly, Plaintiff's request to freeze Defendant's assets must be denied.

### C.  Imposition of Constructive Trust

Under Tennessee law, the remedy of a constructive trust "may only be imposed against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, has obtained an interest in property which he ought not in equity or in good conscience retain." *Mills v. Mills*, No. W2014-00855-COA-R3-CV, 2015 WL 3883176, at *12 (Tenn. Ct. App. June 24, 2015) (citations omitted).  Tennessee courts have imposed constructive trusts in four types of

---

[3] Although Plaintiff does not specifically refer to the relief requested as injunctive relief, an order freezing assets is extraordinary relief that contemplates enjoining Defendant's ability to control its own assets.  Plaintiff has cited neither the Federal Rules of Civil Procedure nor any applicable case law to support his request for an injunctive order freezing Defendant's assets.  Nor has Plaintiff asserted or demonstrated any factual basis supporting injunctive relief.  For this additional reason, Plaintiff's request should be denied.

cases: 1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; 2) where the title to property is obtained by fraud, duress or other inequitable means; 3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and 4) where a person acquires property with notice that another is entitled to its benefits. *Intersparex Leddin KG v. Al-Haddad*, 852 S.W.2d 245, 249 (Tenn. Ct. App. 1992) (citations omitted). The plaintiff has the burden to establish the existence of a constructive trust by clear and convincing evidence. *Mills*, supra at *13 (citations omitted).

Here, Plaintiff has failed to assert, much less establish clearly and convincingly, any factual scenario upon which a constructive trust could be imposed. Most importantly, there is no allegation that Defendant's ownership of its assets is somehow tainted by fraud or that the means by which Defendant acquired ownership of its assets was fraudulent or improper. Constructive trusts look to the manner by which ownership of the putative trust assets is acquired, not how ownership of those assets is or may be divested, which is the focus of Plaintiff's Motion. Plaintiff's request for a constructive trust is nothing more than an end run around the well-established authority precluding him from controlling Defendant's assets to secure satisfaction of a judgment that he has not yet obtained. There is no basis for a constructive trust in this case, and Plaintiff's request must therefore be denied.

### D.  Additional Discovery

Finally, Plaintiff requests that he be permitted to take additional discovery about any asset sale by Defendant. As Defendant notes, the discovery deadline expired in this case on May 31, 2016, after several extensions. Plaintiff must show "good cause" for any further modification of

the discovery deadline. Fed. R. Civ. P. 16(b)(4). *See also Andretti v. Borla Performance Industries, Inc.*, 426 F.3d 824, 830 (6th Cir. 2005)

Plaintiff claims punitive damages in this case (*see* Docket No. at 80 at 1), which means that he could have inquired in discovery about Defendant's financial condition (*see In re Heparin Products Liability Litigation*, *supra*), but for some unstated reason did not do so.[4]  Because Plaintiff had the opportunity to take discovery about Defendant's financial condition, the Court is not inclined to extend the discovery deadline in this case for that purpose. *Andretti*, 426 F.3d at 830 ("The primary measure of Rule 16's 'good cause' standard [for modification of a scheduling order] is the moving party's diligence in attempting to meet the case management order's requirements.") (citations omitted).  The Court's disinclination is also informed by the weight of authority limiting the availability of prejudgment relief when the sole purpose of that relief is to secure satisfaction of some judgment not yet obtained.  Additionally, if Plaintiff ultimately becomes a judgment creditor of Defendant, he will have the availability of post-judgment discovery, as well as remedies for any discovered fraudulent transfers by Defendant.  *See* Tenn. Code Ann. §§ 66-3-301 et. seq. and 66-3-301 et. seq.  For all of these reasons, Plaintiff's request for additional discovery is appropriately denied.

## III.    Recommendation

For the above stated reasons, it is respectfully recommended that Plaintiff's Motion to Attach or Freeze Assets of Defendant or for Other Relief (Docket No. 80) be DENIED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with

---

[4] Defendant acknowledges that Plaintiff could have discovered this information prior to expiration of the pretrial discovery deadline. *See* Docket No. 83 at 6-7.

particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge